Dr. Sharon KABES and Roger Buchholz, Plaintiffs-Respondents,

v.

The SCHOOL DISTRICT OF RIVER FALLS and the School Board for the School District of River Falls, Defendants-Appellants.†

Court of Appeals

*No. 03–0522. Submitted on briefs December 1, 2003.— Decided February 3, 2004.*

2004 WI App 55

(Also reported in 677 N.W.2d 667.)

---

502

503

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Joel L. Alberg* of *Weld, Riley, Prenn & Ricci, S.C.* of Eau Claire.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Jacob P. Westerhof* and *Mindy Rowland Buenger* of *DeWitt, Ross & Stevens, S.C.* of Madison.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J.   The School District of River Falls and the School Board for the School District of River Falls appeal from a summary judgment granted in favor of Sharon Kabes and Roger Buchholz. The trial court concluded the District and Board breached Kabes's and

Buchholz's employment contracts by reassigning them to different schools within the school district without their agreement. The District and Board argue the summary judgment should be reversed and entered in their favor because: (1) WIS. STAT. § 118.24(3) provides them with the authority to reassign a principal and his or her assistants notwithstanding an employment contract, or (2) they reserved the right to reassign Kabes and Buchholz under the "River Falls Personnel Practices for Leadership Management Team." We affirm the judgment.

## BACKGROUND

¶ 2. On June 10, 1996, the Board hired Kabes by written contract to serve as the River Falls High School principal for one year. Since then, the Board offered to renew Kabes's contract for additional two-year periods on three separate occasions, and Kabes accepted all offers. By the terms of the latest agreement, Kabes agreed to be employed as the principal at River Falls High School until the conclusion of the 2002–2003 academic year, ending June 30, 2003.

¶ 3. On September 26, 2000, the Board hired Buchholz by written contract to serve as the River Falls High School assistant principal for one year. On January 15, 2001, Buchholz accepted a two-year contract extension. By this agreement, Buchholz agreed to remain employed as the assistant principal at the school until the conclusion of the 2002–2003 academic year, ending June 30, 2003.[1]

---

[1] At the time of rendering this decision, the contracts have expired. As a result, this case is arguably moot. However, we have the discretion to address an issue that is otherwise moot when the issue presented is of great public importance and is

¶ 4. However, on March 20, 2002, the District and Board unilaterally reassigned Kabes to be principal at Greenwood Elementary School and Buchholz to be assistant principal at Meyer Middle School. Their salaries, however, remained the same as provided in the contracts. Kabes and Buchholz filed suit for breach of contract and sought reinstatement to their positions at River Falls High School.

¶ 5. The trial court granted summary judgment in their favor. It concluded the District and Board breached Kabes's and Buchholz's employment contracts by reassigning them to different schools. The court found the contracts provided Kabes and Buchholz with specific positions at River Falls High School. Thus, reassigning them to other schools, without their agreement, constituted a breach of contract. In so concluding, the court rejected the District and Board's argument that they retained the power to reassign a principal and his or her assistants under WIS. STAT.

likely to arise again. *State v. Trent N.*, 212 Wis. 2d 728, 735, 569 N.W.2d 719 (Ct. App. 1997). This case presents a statutory question of first impression:   whether a school board's power to assign its administrators administrative responsibilities under WIS. STAT. § 118.24(3) preempts an administrator's employment contract created by § 118.24(1) and (6).

Quite simply, this issue draws attention to the dynamics between administrators and school boards when the school boards retain administrators by employment contracts. For this reason, coupled with the fact that this issue concerns the stability of public schools, we conclude this is a matter of great public importance. And with most school administrators working under employment contracts that statutorily cannot exceed two years, we also conclude this issue is likely to arise again. Therefore, we exercise our discretion to address the issue.

All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

§ 118.24(3). The court subsequently ordered Kabes and Buchholz reinstated to their positions at River Falls, and this appeal follows.

## DISCUSSION

¶ 6. We review summary judgments de novo, applying the same methodology and standards as the trial court. *See* WIS. STAT. § 802.08; *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). If there are no disputed issues of material fact, summary judgment is proper where the moving party is entitled to judgment as a matter of law. *Id.* The interpretation of a statute also presents a question of law subject to de novo review. *German v. DOT*, 2000 WI 62, ¶ 7, 235 Wis. 2d 576, 612 N.W.2d 50.

## I. WIS. STAT. § 118.24(3)

¶ 7. All parties agree that Kabes's and Buchholz's employment contracts specified that they were to be employed at River Falls High School. Nevertheless, the District and Board claim they retained the power to reassign Kabes and Buchholz to other schools under WIS. STAT. § 118.24(3). Section 118.24(3) states, "The principal shall perform such administrative and instructional leadership responsibilities as are assigned by the district administrator under the rules and regulations of the school board." The District and Board argue that Kabes's and Buchholz's reassignments were administrative responsibilities that they must have performed.[2]

---

[2] To squarely address this issue, we assume that the rules and regulations of the Board were in place at the time of the

¶ 8. The District and Board construe WIS. STAT. § 118.24(3) as conferring power that cannot be abrogated by an employment contract. From their point of view, § 118.24(3) is immutable and preempts any conflicting contractual terms. This means that even though they contracted with Kabes and Buchholz as principals at River Falls High School for a specific period of time, they can ignore these agreements and reassign Kabes and Buchholz to different schools, provided they comply with Board policy.

¶ 9. Kabes and Buchholz, on the other hand, argue the contract is valid and takes primacy. In addition to WIS. STAT. § 118.24(1)[3] expressly allowing for the creation of employment contracts, they point out that § 118.24(6)[4] specifically requires mutual assent to

transfer. As seen in the next issue below, however, the rules and regulations, the "River Falls Personnel Practices for Leadership Management Team," had expired when the District and Board reassigned Kabes and Buchholz to different schools.

We further assume, but do not decide, that a reassignment is an "administrative responsibility" for purposes of WIS. STAT. § 118.24(3).

[3] WISCONSIN STAT. § 118.24(1) states:

A school board may employ a school district administrator, a business manager and school principals and assistants to such persons. The term of each employment contract may not exceed 2 years. A contract for a term of 2 years may provide for one or more extensions of one year each.

[4] WISCONSIN STAT. § 118.24(6) reads in full:

The employment contract of any person described under sub. (1) shall be in writing and filed with the school district clerk. At least 4 months prior to the expiration of the employment contract, the employing school board shall give notice in writing of either renewal of the contract or of refusal to renew such person's contract. If no such notice is given, the contract then in force shall continue in force for 2 years. Any such person who receives notice

modify an employment contract. Kabes and Buchholz claim this explicit legislative protection of employment contracts suggests that the contract trumps other statutory grants of power. Further, they argue that because their reassignment to different schools clearly was a contractual modification without mutual agreement, the Board and District breached the contract. We agree.

¶ 10.   Essentially, the District and Board would construe WIS. STAT. § 118.24(3) to suggest that a principal is merely a pawn who may be required to surrender his or her position in deference to the school board's task of assigning administrative responsibilities. However, here the pawn is backed by an employment contract. WISCONSIN STAT. § 118.24(1) explicitly authorizes a principal to accept employment under an employment contract. Our supreme court recently stated that an employment contract is "the antidote" to the inherent unfairness implicit in the common law employee-at-will doctrine. *Bammert v. Don's Super Valu*, 2002 WI 85, ¶ 13, 254 Wis. 2d 347, 646 N.W.2d 365.

¶ 11.   It would be senseless for the legislature to expressly allow for the creation of employment contracts, and then to further protect these contracts from modification except by mutual assent, only to furnish

---

of renewal or who does not receive notice of renewal or refusal to renew the person's contract at least 4 months before the contract expiration shall accept or reject the contract in writing on or before a date 3 months prior to the contract expiration. No such person may be employed or dismissed except by a majority vote of the full membership of the school board. *Nothing in this section prevents the modification or termination of an employment contract by mutual agreement of the parties.* No school board may enter into a contract of employment with any such person for a period of time as to which such person is then under a contract of employment with another school board. (Emphasis added.)

the school board with the power to order the principal to carry out the board's will regardless of the contract's terms. This is the problem with the District and Board's interpretation of WIS. STAT. § 118.24(3): it creates an absurd result. If § 118.24(3) is immutable, the District and Board could ignore or change the contract when they see fit. Under this interpretation, and working with the supreme court's depiction of an employment contract, the antidote would be little more than an anodyne that comforts the principal for only as long as the school board lies dormant. Because under the District's and Board's interpretation the employment contracts are rendered empty vessels that hold no legal ramifications when a breach occurs, we must reject it. *See State v. Zielke*, 137 Wis. 2d 39, 51, 403 N.W.2d 427 (1987) (we must interpret statutes to avoid absurd or unreasonable results).

¶ 12. A far more reasonable interpretation is to construe WIS. STAT. § 118.24(3) and § 118.24(1) and (6) together. *See Highland Manor Assocs. v. Bast*, 2003 WI 152, ¶ 9, 268 Wis. 2d 1, 672 N.W.2d 709 ("Statutes relating to the same subject matter should be read together and harmonized when possible."). By its own language, the purpose of § 118.24(3) is to ensure that the principal acts at the behest of the school district. Yet, the aim of § 118.24(1) and (6) is to secure and protect administrators' positions, most likely to guarantee some stability in the public school's administration. Without balancing the power given by § 118.24(3) against the protections of § 118.24(1) and (6), the protections become useless.

■■

¶ 13. Considering these purposes, they can be harmonized to give each provision effect with the following reasonable construction: the Board and Dis-

trict can require the principal to perform administrative responsibilities as long as their performance does not modify the terms of an employment contract.[5] This construction largely retains the District and Board's power over the principal under WIS. STAT. § 118.24(3), with the only caveat being that they must honor what they have contractually agreed to before. And by this caveat, a principal's employment contract retains meaning and its protections under § 118.24(1) and (6) are preserved.

¶ 14. Applying our holding, Kabes's and Buchholz's contracts were for principal and assistant principal at River Falls High School. Neither contract contained a provision allowing for reassignment. Thus, reassignment to schools different from the one specified in the contracts constituted a unilateral modification of the contracts. Consequently, the District and Board breached the contracts by reassigning Kabes and Buchholz without their agreement to different schools.

## II. RIVER FALLS PERSONNEL PRACTICES FOR LEADERSHIP MANAGEMENT TEAM

¶ 15. Alternatively, the District and Board argue they did not breach the employment contracts because they retained the power to reassign Kabes and Buchholz by virtue of an agreement with school administrators entitled, "River Falls Personnel Practices for Lead-

---

[5] Should the principal agree to modify the terms, however, the modification will be accepted. *See* WIS. STAT. § 118.24(6).

ership Management Team."[6] Article XI of that agreement states the District retained the right "to make assignments and transfers as necessary in the best interest of the District." On this basis, they claim Kabes's and Buchholz's reassignments were justified. We are not persuaded.

¶ 16. The District and Board rely on either the 1999–2001 or 2001–2003 versions of this agreement to justify the reassignments.[7] However, as to the earlier version, the District and Board cannot rely on it because, by its own terms, it expired on June 30, 2001. Again, the District and Board unilaterally reassigned Kabes and Buchholz on March 20, 2002, nearly nine months after the agreement terminated.

¶ 17. The District and Board nevertheless argue the 1999–2001 agreement remained in effect until the 2001–2003 agreement became operational on October 21, 2002. They claim: (1) past practice establishes an expired agreement continues until a new agreement is made, and (2) the District continues its bargaining agreements with its teachers after they expire, therefore the agreement with the administrators should likewise be extended.[8]

[6] This is an agreement entered into by the District and the administrators that outlines an administrator's responsibilities, rights and employment benefits as well as the District's rights and responsibilities.

[7] Both versions contain the same provision allowing for assignments and transfers.

[8] The District and Board also argue that the 1999–2001 agreement remained in effect after its expiration because Kabes and Buchholz continued to accept their salary and benefits. However, Kabes and Buchholz received their salary by the terms of the contract. While the contracts specified their salaries conformed to the salary policies adopted by an unspeci-

¶ 18.   However, there is nothing ambiguous about the agreement terminating on "June 30, 2001." Thus, the District and Board's arguments cannot alter the agreement's plain and unambiguous language. *See Borchardt v. Wilk*, 156 Wis. 2d 420, 427, 456 N.W.2d 653 (Ct. App. 1990) ("Where the terms of a contract are plain and unambiguous, we will construe it as it stands."). Therefore, the District and Board cannot rely on the 1999–2001 agreement to justify Kabes's and Buchholz's reassignments.

¶ 19.   Regarding the 2001–2003 version, it cannot justify the District and Board's reassignments for three reasons. First, as noted above, the 2001–2003 agreement did not become operational until October 21, 2002, nearly six months after the District and Board reassigned Kabes and Buchholz. Second, while other administrators entered into this agreement, Kabes and Buchholz actually refused to sign it. Third, Kabes's and Buchholz's employment contracts did not incorporate this agreement's terms.[9] Stated simply, Kabes and

fied version of the agreement, no other provisions of the unspecified version of the agreement were incorporated into the contracts.

[9] In fact, the only mention of the agreement in Kabes's and Buchholz's contracts was that their salary conformed to the salary policies adopted by an unspecified version of the agreement.

It is interesting to note that in October 2002, after Kabes and Buchholz were already at their newly assigned schools, the District offered them new contracts for administrative positions at these schools. Contained in the contracts was a clause that stated: "Terms specified in the 'Personnel Practices for Educational Leadership Management Team' are incorporated into this

513

Buchholz cannot be bound by the terms of an agreement to which they never agreed. *See Madison Gen. Hosp. v. Haack*, 124 Wis. 2d 398, 404, 369 N.W.2d 663 (1985) ("Express contracts and contracts implied in fact rest on the assent of the parties."). Consequently, Kabes's and Buchholz's reassignments cannot be justified on the 2001–2003 agreement.

*By the Court.*—Judgment affirmed.

agreement." Because Kabes and Buchholz maintained, they already had contracts to remain at River Falls High School until June 2003, they declined to accept the District's offers.